# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| ANNETTE R. WASSOM, an individual,<br><br>*Plaintiff*,<br><br>v.<br><br>GEORGE HENRY WRIGHT III, an individual, INTELLIGENT WEALTH, LLC, a registered Utah limited liability company, NUDGE, LLC, a registered Utah limited liability company, NEW PEAKS, LLC, a registered Utah limited liability corporation,<br><br>*Defendants*. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:16-cv-01143-JNP-PMW<br><br>Judge Jill N. Parrish<br>Magistrate Judge Paul M. Warner |

Before the Court is the IW Parties' Motion to Dismiss First Amended Complaint (ECF No. 23) and Defendant Nudge, LLC's Motion to Dismiss First Amended Complaint (ECF No. 24). For the reasons set forth below, both motions are GRANTED. Plaintiff's complaint is dismissed without prejudice. Plaintiff has twenty-one days from the date of this Order to file an amended complaint.

## I. INTRODUCTION

This is a Title VII case. Plaintiff Annette R. Wassom filed suit against Defendants George Henry Wright III; Intelligent Wealth, LLC ("IW"); Nudge, LLC; and New Peak, LLC, claiming that she was sexually harassed by Wright. Wassom alleges that she was an employee of IW, Nudge, and New Peak and seeks to hold all three entities liable under Title VII of the Civil Rights Act. Wassom also alleges that IW, Nudge, and New Peak are jointly and severally liable because they were partners in a joint venture, but in the event the Court finds otherwise, Wassom

asks the Court to "pierce the corporate veil" of each entity to make them jointly and severally liable. IW and Nudge have moved to dismiss Wassom's Title VII claim and her claim to "pierce the corporate veil." Wright has moved to dismiss the claims against him on the grounds that such claims are redundant with those alleged against IW, Nudge, and New Peak.

## II. STATEMENT OF FACTS

The following facts are alleged in Wassom's "First Amended Complaint":[1]

Wassom began dating Wright in November 2014. Am. Compl. ¶ 3.1. The relationship involved ongoing sexual activity. Am. Compl. ¶ 3.2. While the relationship was ongoing, Wright hired Wassom to work for him at IW on a part-time temporary basis. Am. Compl. ¶ 3.3. IW markets the products and services of New Peaks. Am. Compl. ¶ 3.4.

Wright was hired to work at Nudge, an affiliate of New Peak, while he was dating Wassom. Am. Compl. ¶ 3.5. When he was hired by Nudge, Wright closed the offices of IW, sold IW's furniture and equipment, fired most of the IW staff, and headquartered his business activities in the Nudge facility. Am. Compl. ¶ 3.6. At Nudge, Wright worked in furtherance of the business activities of Nudge and New Peaks. Am. Compl. ¶ 3.6. Nudge, New Peak, and IW did not distinguish between themselves in marketing efforts and public events. Am. Compl. ¶ 4.19C. Both Nudge and New Peak have more than fifteen employees. Am. Compl. ¶ 4.4-4.5.

Wright brought Wassom with him to work at Nudge, and Wassom worked at Nudge for the benefit of Nudge and New Peaks. Am. Compl. ¶ 3.7. In July 2015, Wassom began working full-time at Nudge as an executive assistant to Wright and two other Nudge officers, David McCoy and Tammy Castro. Am. Compl. ¶ 3.8. Wassom was promised a salary of $750.00 per week and told that she needed to be in the office for work activities. Am. Compl. ¶ 3.9. Wassom

---

[1] The "First Amended Complaint" is actually the second amended complaint that Wassom has filed. But it is the first complaint that she filed with the assistance of counsel.

2

was told, presumably by a Nudge employee, that other employees had been fired for not coming into the office for work. Am. Compl. ¶ 3.10.

During the course of her employment, Nudge set Wassom's work hours, required her to track her time, and directed and supervised her work performance. Am. Compl. ¶ 3.11-3.13. Nudge supplied Wassom with equipment and office supplies, and Wassom did not purchase any supplies for work-related use. Am. Compl. ¶ 3.15-3.16. During the course of Wassom's employment, Nudge and New Peaks were partners in numerous ventures and both companies used Wassom's services in furtherance of those ventures. Am. Compl. ¶ 3.20. IW, Nudge, and New Peak all held Wassom out as their employee when she dealt with others while planning public events. Am. Compl. ¶ 4.19D.

During the course of Wassom's employment, Wright made repeated sexual demands of Wassom during work hours. Am. Compl. ¶ 3.23. When Wassom spurned Wright's advances, he would pressure her, indicating that he was the boss and that she would still be paid for her time. Am. Compl. ¶ 3.24. Wright flirted with Wassom and made sexual comments on a daily basis. Am. Compl. ¶ 3.25. Wright made sexual demands of Wassom about four times per week during business hours. Am. Compl. ¶ 3.26. Wassom felt that engaging in sexual activity with Wright was a condition of her employment and that she could not refuse him. Am. Compl. ¶ 3.30.

During their relationship, Wright and Wassom frequently argued about Wassom's reluctance to engage in sexual activity during work hours. Am. Compl. ¶ 3.32-3.33. After these arguments, Wright used his position as Wassom's supervisor to give her additional work. Am. Compl. ¶ 3.33. Wright often implied that Wassom would advance in the business so long as she continued with their relationship. Am. Compl. ¶ 3.34.

Wassom was told, during the course of her employment, that Nudge and New Peak reimbursed Wright for her salary. Am. Compl. ¶ 3.35. Wassom was also told that she was working for the "joint venture" undertaken by Nudge and New Peak. Am. Compl. ¶ 3.35.

On or around November 3, 2015, after numerous sexual demands, Wassom told Wright that she felt like she was being raped and that she wanted to end their relationship. Am. Compl. ¶ 3.36. On or around November 10, 2015, Wassom again told Wright that she wanted to end their relationship. Am. Compl. ¶ 3.37. The next day, David McCoy, a Nudge officer, fired Wassom. Am. Compl. ¶ 3.38.

The day after she was fired, Wassom confronted Wright about her termination. Am. Compl. ¶ 3.39. Wright told Wassom, "Of course the business and personal go together. How could they not?" Am. Compl. ¶ 3.40.

### III. DISCUSSION

Nudge has moved to dismiss Wassom's claims against it on the grounds that it was not her employer for the purposes of Title VII and that she has not alleged sexual harassment. Wright has moved to dismiss Wassom's claims against him on the grounds that he cannot be held liable under Title VII because he was Wassom's supervisor. And IW has moved to dismiss Wassom's claims against it on the grounds that it does not meet Title VII's fifteen-employee requirement. Finally, IW and Nudge both contend that Wassom's claim to "pierce the corporate veil" is improper. The parties' arguments are addressed below.

#### A. MOTION STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim when the plaintiff fails to state a claim upon which relief can be granted. The Court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties may present at trial but to "assess whether the plaintiff's complaint alone is legally sufficient to state a

claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1108 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has alleged facts that allow "the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The *Iqbal* evaluation is a two-step analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," which includes allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-81. Second, the court considers the factual allegations that are entitled to the assumption of truth "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, the plaintiff's claim survives the motion to dismiss. *Id.* at 678. A complaint is insufficient if it contains "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 678.

### B. TITLE VII

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). An employer is defined as "a person engaged in an industry affecting commerce who has fifteen or

5

more employees." § 2000e(b). An employee, in turn, is defined as "an individual employed by an employer." § 2000e(f).

## C. WASSOM'S TITLE VII CLAIM AGAINST NUDGE

Wassom claims that she was an employee of Nudge and seeks to hold it liable for the sexual harassment she experienced while working for Wright. Although Wassom alleges that she was paid by Wright, she claims that she was an employee of IW, Nudge, and New Peak because the companies were engaged in a joint venture. Wassom also claims that Nudge and New Peak reimbursed Wright for her salary, supporting her claim that Nudge employed her. Nudge, however, contends that Wassom has not alleged sufficient facts to support a plausible claim that it was her employer. Nudge also contends that Wassom has failed to show that she was sexually harassed.

### 1. Whether Nudge Was Wassom's Employer

First, the Court considers whether Wassom's allegations support a plausible claim that Nudge was her employer. To make out a *prima facie* case under Title VII, a plaintiff must prove that the defendant was his or her employer. *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014). If a plaintiff cannot prove that the defendant was his or her employer, the claims against the defendant fail. *Id.* Although a direct employment relationship provides the usual basis for liability, "courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an 'employer.'" *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997). Such doctrines do not turn on state partnership or joint venture laws, as the parties seem to suggest in their briefs.

Generally, a factfinder must determine whether a defendant is an employer for purposes of Title VII when doubt exists as to which one, or ones, of multiple individuals or entities employed the plaintiff. *Knitter*, 759 F.3d at 1225. Depending on the circumstances, the Tenth

Circuit chooses among three different tests to analyze whether a defendant is an employer: (1) the hybrid test; (2) the joint-employer test; and (3) the single-employer test. *Id.* at 1225-26. Wassom's allegations suggest that either the joint-employer or single-employer test could possibly apply to the case at hand.

"Under the joint employer test, two entities are considered joint employers if they 'share or co-determine those matters governing the essential terms and conditions of employment.'" *Id.* at 1226 (quoting *Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002)). Both entities are employers if they "exercise significant control over the same employees." *Id.* (quoting *Bristol*, 312 F.3d at 1218). If an independent entity exercises sufficient control over the terms and conditions of employment of a worker formally employed by another entity, the independent entity is considered a joint employer under Title VII. *Id.*

To decide whether a defendant exercises significant control over a worker's employment, the Tenth Circuit has considered the following factors: (1) the right to terminate the employee; (2) the ability to "promulgate work rules and assignments"; (3) "day-to-day supervision of employees, including employee discipline"; (4) control over compensation, benefits, and hours; and (5) "control of employee records, including payroll, insurance, taxes and the like." *Id.* (quoting *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485, 491 (W.D. Pa. 2007)).

The single-employer test allows a plaintiff who is an employee of one entity "to hold another entity liable by arguing that the two entities effectively constitute a single employer." *Id.* at 1226 (quoting *Bristol*, 312 F.3d at 1218). As the Second Circuit has explained, the term "employer" in Title VII is "sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether the party may technically be described as an 'employer' . . . at common law." *Spirt v. Teachers Ins. & Annuity*

*Ass'n*, 691 F.2d 1054, 1063 (2d Cir. 1982) *vacated and remanded on other grounds*, 463 U.S. 1223 (1983) (citation omitted).

The single-employer test focuses on "the relationship between the potential employers," not the relationship between the employee and the potential employers. *Knitter*, 758 F.3d at 1227. "Underlying the single employer test is the requirement 'that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of the aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer.'" *Lockard v. Pizza Hut*, 162 F.3d 1062, 1070 (10th Cir. 1998) (quoting *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (10th Cir. 1983)).[2]

The Tenth Circuit articulated the following criteria to determine whether two nominally separate entities constitute a single employer for the purpose of Title VII: "(1) interrelations of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership and financial control." *Id.* (quoting *Bristol*, 312 F.3d at 1220). The key factor of this four-part test is the third factor, "whether the putative employer has centralized control of labor relations." *Id.* As such, the critical question is, "[W]hat entity made the final decision regarding employment matters related to the person claiming discrimination?" *Id.* (*Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir. 1993)).[3]

---

[2] While the Tenth Circuit has not definitively adopted the single-employer test, it has applied it in several cases. *See Lockard*, 162 F.3d at 1070 ("The trend in Title VII cases appears to be in favor of adopting the [single-employer test]."); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991).

[3] Wassom's allegations suggest that the single-employer test may be best suited for the case at hand. Her allegations suggest that IW would not meet Title VII's fifteen-employee requirement, so she seeks to aggregate the employees of all three entities, or at least Nudge and IW for the purposes of these motions. In short, Wassom attempts to treat the nominally separate entities—IW, Nudge, and New Peak—as an integrated enterprise, and thus the single-employer test appears most applicable to the case at hand. *See Lockard*, 162 F.3d at 1226-27 (explaining that

To satisfy the control prong, one company must control the day-to-day employment decisions of the other company. *Id.* In *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995), a parent company and a subsidiary company constituted a single employer because, among other reasons, (1) an employee of the subsidiary was fired at the direction of an employee of the parent and (2) the president of the subsidiary operated out of the parent's office. In contrast, in *Lockard*, a franchisor and franchisee did not constitute a single employer because the franchisor did not make final decisions regarding employment matters and did not control the day-to-day employment decisions of the franchisee. 162 F.3d at 1071.

Here, the Court is not convinced that Wassom has alleged sufficient facts to plausibly establish that Nudge was her employer under either the single- or joint-employer test. This is due, in part, to the fact that counsel for Wassom was not focused on either test when the complaint was drafted. Instead, the allegations were drafted to support a theory that IW, Nudge, and New Peak were partners in a joint venture. However, counsel for Wassom now concedes that the Title VII employment tests are the proper legal framework that the Court should use to determine whether Nudge was Wassom's employer for the purposes of Title VII. Based on this, and the reasons set forth below, the Court cannot conclude that Wassom has plausibly established that Nudge was her employer.

To plausibly establish that Nudge was her employer under either the single- or joint-employer test, Wassom must clarify a number of the allegations in the complaint. For instance, Wassom states that when Wright was hired by Nudge, he "closed the offices of IW, and sold the furniture and equipment, terminated most IW staff, and headquartered his business activities in the Nudge facility . . . ." This could mean that Wright began to operate IW's business activities

---

the single-employer test asks whether "two nominally separate entities should in fact be treated as an integrated enterprise").

from the Nudge facility.[4] However, it could also mean that IW ceased operations and that Wright began working as nothing more than a Nudge employee.[5] Clarity on points such as this will allow the Court to determine whether Nudge was Wassom's employer.

Wassom also provides little detail on the ownership and management structure of IW or Nudge. Wassom alleges that she worked for two Nudge officers, McCoy and Castro. But she fails to explain what work she did for them and how much time per day she spent working for them. Wassom also fails to explain whether McCoy or Castro were officers or owners of IW.[6] Perhaps most importantly, Wassom fails to allege what Wright's role was at IW and what role he played at Nudge. Without more information on these points, the Court is unconvinced that Nudge is Wassom's employer.

Wassom's allegations regarding her compensation are also unclear. Wassom states that she was told that "Wright was being reimbursed from [sic] her salary by Nudge and New Peak . . . ." At oral argument, counsel for Wassom suggested that this should be read to mean that IW

---

[4] Counsel for Nudge urged the Court to adopt this interpretation at oral argument. In fact, counsel for Nudge made representations that Wright moved the IW operations to the Nudge facility as part of the winding up of IW's business operations. During this time, according to counsel for Nudge, IW carried on its operations separate and apart from Nudge. This, of course, begs the question, why was IW brought into the Nudge facility to wind up its business if it continued to operate separate and apart from Nudge?

[5] Counsel for IW urged the Court to adopt this interpretation at oral argument. Based on IW's reading, Wassom stopped being an employee of IW and became a Nudge employee when Wright moved his business operations to Nudge. If this is the case, then Nudge may be liable for the harassment that Wassom suffered at the hand of Wright because Nudge meets Title VII's fifteen-employee requirement.

[6] Attached to Nudge's supplemental briefing is a declaration made by Wright in which he states that McCoy is an owner of IW. An overlap in management at IW and Nudge suggest that IW and Nudge should be treated as a single entity. But because this is a motion to dismiss, the Court focuses only on the allegations in the complaint.

was paying Wassom's salary and being reimbursed by Nudge and New Peak.[7] But the allegation actually suggests that that Wright, not IW, was paying Wassom's salary. The ambiguity with respect to who was paying Wassom undermines the Court's ability to determine whether she was employed by Nudge.

Throughout the complaint, Wassom fails to identify which defendant is responsible for the alleged conduct. Wassom makes a number of allegations against Defendants collectively, without explaining which entity is directly responsible for the alleged conduct. Wassom also uses the passive voice throughout her complaint, leaving the Court to speculate on the following points: Who told Wassom that she needed to be in the office for work activities? Who told her that other employees had been fired for not showing up to work? Who promised her a salary of $750.00 per week? Who brought her on as a full-time employee at Nudge? Providing clarity on these points will allow the Court to determine whether Wassom was plausibly an employee of Nudge.

Finally, Wassom is unclear on what, if anything, IW did for Nudge and New Peak after Wright "headquartered his business activities in the Nudge facility." The only hint of what IW did is Wassom's allegation that it engaged in "marketing" for Nudge and New Peak. Representations by counsel at oral argument suggest that the entities were engaged in wealth-planning seminars. Information on what exactly IW did for Nudge will allow the Court to determine whether Nudge was Wassom's employer.

---

[7] Such a reading is supported by the check attached to Nudge's supplemental briefing. The check shows that IW paid Wassom $112.50 on November 18, 2015, close in time to when she was fired by McCoy. But, again, because this is a motion to dismiss, the Court only considers those allegations in the complaint. The fact that Wassom was being paid by IW while working in the Nudge facility for Nudge officers may, however, support a claim that IW and Nudge should be treated as a single entity for the purposes of Title VII.

In sum, the Court is unconvinced that Wassom has alleged sufficient facts to plausibly establish that Nudge was her employer under the applicable Title VII employment tests. However, based on the existing allegations and the representations made at oral argument, the Court is of the view that Wassom will be able to allege sufficient facts to plausibly establish that Nudge was her employer if she is given the opportunity to amend her complaint. Accordingly, Wassom's Title VII claim against Nudge is dismissed without prejudice. Wassom has twenty-one days from the date of this Order to amend her complaint to plausibly establish that she was employed by Nudge.

**2. Harassment Based on Sex**

Second, the Court considers Nudge's argument that "[Wassom's] failed relationship does not support a claim of sexual harassment." Nudge contends that Wassom fails to show sexual harassment because "personal animosity" is not equivalent to sexual harassment. Wassom responds that her termination had everything to do with her gender, not personal animosity, because Wright threatened her job if she refused to have sex with him and had her fired when she ended their relationship.

The Tenth Circuit recognizes two categories of sexual harassment claims: (1) *quid pro quo* sexual harassment, and (2) hostile work environment sexual harassment. *Hicks v. Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987). "*Quid pro quo* harassment occurs when submission to sexual conduct is made a condition of concrete employment benefits," and "hostile work environment harassment arises when sexual conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment.'" *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

Nudge cites *Succar v. Dade County School Board*, 229 F.3d 1343 (11th Cir. 2000), for the startling proposition that Wright's alleged "misconduct" (*e.g.*, demanding sex during work hours) does not constitute sexual harassment because the harassment was based on a "personal feud," not gender. In *Succar*, the Eleventh Circuit held that a female teacher's verbal and physical harassment of a male teacher did not amount to sexual harassment because the harassment was the result of a "failed relationship," not gender. *Id.* at 1345.

However, the idea that harassment based on a failed relationship cannot constitute sexual harassment has been criticized as illogical: "*Succar* appears to affirm the fallacy that harassment could not be based upon sex because it was based upon acrimony resulting from a failed relationship . . . ." *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 232 n.6 (1st Cir. 2007). Moreover, *Succar* does not speak to a situation in which sex was made a condition of employment; instead, the male teacher claimed that the female teacher harassed him by "making verbal threats (such as she would have students falsely accuse [him] of sexually molesting them), using foul language, leaving notes on his car windshield, and embarrassing [him] in front of his students and other teachers by criticizing him." *Succar v. Dade Cty. Sch. Bd.*, 60 F. Supp. 2d 1309, 1311 (S.D. Fla. 1999).

Here, Wassom alleges that Wright demanded sex as a condition of employment and that she was fired when she stopped having sex with Wright. Wassom also alleges that she was punished with an increased workload when she spurned Wright's sexual advances. Wassom has clearly alleged sufficient facts to support a case for *quid pro quo* sexual harassment under Tenth Circuit case law. *See Hicks*, 833 F.2d at 1414 ("The gravamen of a *quid pro quo* sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal

to submit to the conduct."). And, even if *Succar* was binding, the Court is not persuaded that it mandates dismissal when the harassment alleged is conditioning employment on sex. Thus, the Court holds that Wassom's allegations give rise to a plausible inference that she was discriminated against based on sex.

### D. WASSOM'S CLAIMS AGAINST IW

IW contends that the claims against it should be dismissed because it does not have enough employees, fifteen, to qualify as an employer under Title VII. IW also claims that it was not engaged in a joint venture with Nudge or New Peak so their employees should not count against it for Title VII purposes. Wassom maintains that she has alleged sufficient facts to give rise to a plausible inference that IW was engaged in a joint venture with Nudge and New Park and therefore the employees of Nudge and New Peak should be considered employees of IW for the purposes of Title VII.

Whether an employer meets the fifteen-employee requirement is a factual question to be determined on the merits. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006). In some instances, the employees of two separate entities may be combined to meet the fifteen-employee requirement. *See Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391-92 (8th Cir. 1977) ("[A] number of courts have allowed [consolidation of separate entities], basing their reasoning on the remedial purposes of Title VII."); *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1361 (11th Cir. 1994) (holding that district court was correct to conclude that two nominally separate entities employed more than fifteen employees). The question of whether to combine entities for the purposes of Title VII does not turn on whether the entities were engaged in a joint venture or partnership under state law, as the parties suggest in their briefing.

Instead, when deciding whether to combine separate but related entities, courts look to the single-entity test, discussed above. *See, e.g.*, *Baker*, 560 F.2d at 392; *Radio & Television*

*Broad. Technicians Local Union v. Broad. Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965) (noting that the relevant criteria used by the NLRB when determining whether nominally separate business entities constitute a single employer are "interrelation of operations, common management, centralized control of labor relations and common ownership")).

While Wassom's allegations suggest that IW does not have fifteen employees, she may be able to plausibly establish, once her complaint is amended, that IW and Nudge should be treated as a single entity for the purposes of Title VII. Wassom alleges that Nudge has fifteen employees, and if IW and Nudge are treated as a single entity, IW would have over fifteen employees. Accordingly, Wassom's Title VII claim against IW is dismissed without prejudice.

### E. WASSOM'S CLAIM AGAINST WRIGHT

Wassom named Wright as a defendant. Wright contends that he is an improper defendant because supervisors cannot be held personally liable under Title VII and the claims against him are redundant with the other Title VII claims. Wassom argues that supervisory employees may be named as defendants in Title VII actions as a means to sue employers under an agency theory.

"[P]ersonal capacity suits against individual supervisors are inappropriate under Title VII." *Butler v. City of Prairie Village*, 172 F.3d 736, 743 (10th Cir. 1999) (quoting *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996)). And although a plaintiff may name supervisors in the supervisor's official capacity or as an alter ego of the employer, such a practice is "superfluous where . . . the employer is already subject to suit directly in its own name." *Lewis v. Four B Corp.*, 211 Fed. App'x 663, 665 n.2 (10th Cir. 2005). In these cases, courts in the Tenth Circuit "regularly dismiss claims against a supervisory employee in his or her official capacity." *Bushby v. Med. Ctr. of Rockies*, No. 13-cv-01467-PAB-KLM, 2014 WL 4627277, at *1 (D. Colo. Sep. 16, 2014) (collecting cases).

Wassom concedes that she cannot sue Wright in his individual capacity and that her claims against Wright in his official capacity are redundant with the claims against IW, Nudge, and New Peak. *See id.* at *1-2. At oral argument, counsel for Wassom appeared to concede that the claim against Wright is improper. Accordingly, Wassom's claims against Wright are dismissed with prejudice.

### F. Wassom's Claim to "Pierce the Corporate Veil"

Wassom's second cause of action seeks to "pierce the corporate veil [of IW, Nudge, and New Peak] . . . , making [them] jointly and severally liable for Defendant Wright's sexual harassment of the Plaintiff." Am. Compl. ¶ 4.21. Notably, Wassom does not seek to hold the owner of an entity accountable for the entity's liabilities, rather she seeks to hold nominally separate entity accountable for one of the entities' liabilities; although Wassom fails to allege which entity is directly liable.

The doctrine of alter ego liability, which allows courts to pierce the corporate veil, is "not an independent claim for relief; rather, it is a theory of liability." *Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 634 n.1 (Utah 2012). The court is unaware of a Title VII case in which alter ego liability has been used to reach the assets of a related but separate entity, the relief Wassom seeks. Indeed, the decision of whether an entity is considered an employer for purposes of Title VII is grounded in federal law, not state law as the parties suggest.

Wassom's second cause of action is properly interpreted as an attempt to hold IW, Nudge, and New Peak liable under Title VII by using one of the Title VII employment tests discussed above. The Court has determined that Wassom may be able to allege sufficient facts to support a claim that Nudge and IW should be treated as a single entity for Title VII purposes, and thus Wassom's claim to "pierce the corporate veil" is subsumed into her first cause of action.

Accordingly, Wassom's claim to "pierce the corporate veil" is dismissed with prejudice as to all Defendants.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the Court GRANTS the IW Parties' Motion to Dismiss (ECF No. 23) and GRANTS Nudge's Motion to Dismiss (ECF No. 24). Specifically, (1) Wassom's Title VII claims against IW and Nudge are dismissed without prejudice, (2) Wassom's Title VII claim against Wright is dismissed with prejudice, and (3) Wassom's claim to "pierce the corporate veil" is dismissed with prejudice. Wassom has twenty-one days from the date of this Order to amend her complaint.

Signed October 19, 2017

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge